We'll hear argument next in Case 16-6219, Davila v. Davis. Mr. Kretzer. Mr. Chief Justice, and may it please the Court, the nature and logic of Martinez naturally applies to claims of ineffective assistance of appellate counsel, just as it does to claims of ineffective assistance of trial counsel. Eric Davila faces execution despite having been convicted pursuant to erroneous jury instructions that vitiated his only viable defense. On direct appeal, Davila's counsel recognized the centrality of the intent issue, but challenged only sufficiency of the evidence, not the jury instructions. Sotomayor, may I ask you, when do you believe that counsel below objected? And your brief seems to assume he did, but as I read the transcript, I can't find a line where he objected clearly. Assuming he didn't object clearly, can you say under any circumstance that appellate counsel was ineffective for choosing the route he did? Given plain error review, if there was no objection, wasn't the sufficiency of the evidence the best way to approach a forfeited error? Well, as an initial matter, it must be remembered that plain error is not the standard in Texas. Even if a jury instructional objection is not made, all that happens under Almanza is the standard of review turns to from harm to egregious harm, which is less incisive for Petitioners than plain error standard, which prevails in Federal court. But more importantly, the trial counsel did object, particularly at page 52 of the joint appendix. Sotomayor, he objected to the sequence of what the judge was saying. He didn't argue any transferred intent in the way that the court later found in Roberts. I think it's Roberts, if I'm yes, if my memory is correct. He didn't. I don't see any discussion of the Roberts transferred intent. All he argued was give the original instruction over again and then give this new one. Oh, no, he did not say then please do give the new one. There's no doubt the objection could have been better calibrated. And yet, the closing of a discreet, complete sentence said we object to giving of the supplemental instruction. And immediately thereafter, the State trial judge said overruled. And it must be remembered. Roberts, sorry, counsel, just to follow up on Justice Sotomayor's point, I think you've argued at page 228 of the joint appendix that trial counsel's objection was not sufficient to cover the charging error. And I think that the Federal District Court on habeas found the same thing on page 366. And so that raises, to my mind, the question whether Martinez applies here. Couldn't your client have brought a Martinez claim? And isn't the Martinez rule premised on the idea you get one clear shot at bringing the issue, and maybe the absence of one clear shot here would bring you within the rule of Martinez, and that would take care of this case? What am I missing there? Yes, absolutely. The reason this could not have been couched as a Martinez ineffective assistance of trial claim in Federal habeas is even if the objection had not been proper to preserve the issue in the Texas State court and then in the court of criminal appeals, there's still no way that the direct appellate attorney argued the issue either way. In other words, what should have happened, the conforming constitutionally sufficient direct appellate brief should have argued during instructional error, and then first in the situation that the objection had been preserved by the objection, hence harm under Almanza, or alternatively, that the objection in the trial court was not sufficient to preserve the objection and would move to egregious harm under Almanza. But in no case, in no situation, was there no underlying error for the State direct appellate attorney to argue against. Roberts, one thing a good appellate lawyer will do is pare down the issues that are presented on appeal. Even if they think that some of those issues have merit. I mean, if you have six issues that you think you can argue credibly before the appellate court, you may decide it would be much better to focus that court on the two or three strongest issues, that adding the others will in fact dilute from the value of that. So when you have these, I'm not talking about this particular case, but in general, when you have the claim of ineffective assistance of appellate counsel, it's sometimes easy in retrospect to say, well, here's an issue, you know, maybe the appellate counsel, in the exercise of discretion, thought it was like number six in the order of strength. And you look back and in hindsight you say, well, he should have made more of that. And it's not even mentioned at all in the appellate brief. I mean, I know there's also issues of trial strategy, but it seems it's more typical in an appellate case that you have, you know, you leave things off the table. Is that going to present a problem in your view in evaluating the effectiveness of appellate counsel? Gannon, No, it will not. There is no doubt that appellate attorneys retain substantial discretion to not raise certain claims that are regarded to be necessarily weaker. In fact, in a trial, presumably almost all appellate lawyers have to necessarily not raise some claims. That's why the backstop of our argument is substantiality. In other words, it's not one thing to raise an appellate claim that might have, you know, gotten you somewhere and yet not likely to have gotten a reversal in the reviewing State court of appeals. It's very difficult to raise a substantial claim, by which we mean in this context one that, and this is a sort of distinction that Federal district judges make all the time in habeas, but the question here would be whether or not it was likely that that claim would have resulted in a different outcome in the reviewing court of appeals. And in a case like that. Ginsburg. Ginsburg, in this actual case, didn't the district court hold that the ineffective assistance of appellate counsel argument on the merits was insubstantial? And if it was insubstantial, then we don't even have to get to the question you would like to present to us. Was there an alternative holding that in any case there's this objection to the instruction? Was it insubstantial? Yes. The Federal District Court did make an alternative holding on the merits. However, that was not addressed in the Fifth Circuit's opinion and was hence not a part of the judgment that was appealed to this Court. So at the minimum, what we would ask for relief is the same as this Court afforded in Martinez, which was a remand to the Reviewing Court of Appeals, in that case the Ninth Circuit, for a determination as to that prejudice prong. And in fact, Mr. Martinez was ultimately unsuccessful in Federal District Court in Arizona on the prejudice prong. You're right. I'm sorry. Kennedy, on the issue of whether or not Martinez should be extended to alleged inadequate assistance of counsel on appeal, what is the test that I'm supposed to apply? The practicality of this, the consequences, the private interests of the prisoners and the public interest in finality, is that what I'm supposed to do? Is there some test you want me to apply? And when this test is applied, I have to say it was somewhat stunning to me to read at page 15 of your brief that one study indicates that although 81 percent of habeas petitions in capital cases raise the claim of ineffective assistance of counsel, only 31 percent allege ineffective assistance of appellate counsel. That's a third of the cases. This is a tremendous burden. Well, to answer your question, no. The test that we would ask you to apply is the same that was in Martinez. Basically, first, was there a substantial claim? Was that claim defaulted in the initial review collateral proceeding? And when we say substantial, we mean one that was likely to have resulted in a different outcome. That's why claims will be very rare of substantial claims of ineffective appellate counsel, and yet when they do exist, they will likely be incredibly meritorious claims. Kennedy, I thought you were saying that. Kennedy, my question was the systemic one. What are the systemic standards I look to to see whether or not we should extend Martinez to this kind of case? Well, yes. And what guidance? I look like Matthews v. Eldridge. I'm the one that, or this Court is the one that balances? Well, yes. In Martinez, this Court particularly created an equitable rule in the exercise of this Court's discretion saying that there would be an exception, as it were, to cause, and the cause in prejudice inquiry, because otherwise you would have Petitioners who would never have any forum in which this ineffective assistance claim could be litigated. The door has been open to Martinez now for over 5 years. There has not been an inundation of new petitions in Federal court. Have most of them been inundated? Well, one significant distinction, of course, is that these claims of appellate assistance, ineffective appellate assistance of counsel, under the logic, can be raised in every State. Martinez, Trevino, it's only where the State has funneled the decisions to collateral review. Appellate claims like this, you know, obviously can't be brought on appeal in every State. And so this would arise, in terms of evaluating the statistics, it would be many, many times the numbers of Martinez claims that you see. And we see, and there are now, an awful lot of Martinez claims anyway. In Martinez, what Arizona had done was set as a statutory matter, you cannot raise an ineffective assistance contention in the direct appeal. Instead, it was deliberately channeled over to habeas. There's a reason that in a claim like Mr. Davila's, that the initial review collateral opportunity to challenge the ineffective contention is State habeas, and that is because it is impossible, physically impossible. Roberts. Roberts. I've got to, for them to raise the appellate. Yes. I'm sorry to cut you off, but I understand that. But that's going to be true in every State, right? It's going to be, you're going to have the same difficulty of raising ineffectiveness of appellate counsel on direct review in every State. If that would be a uniform. Yeah. Martinez, one of the important considerations, at least for some in Martinez, is that it is narrow. It's only where the State has funneled the ineffective assistance at trial claims to collateral review. I would ask the Court to look at the vantage point. In Martinez, there was not a mechanism by which the States were punished for removing the claim from direct appeal to habeas. It was an equitable exception in favor of the Petitioner, because if the equitable exception were not there, then Petitioners would suffer the reality there would be no court ever would. Sotomayor, you're not dealing with the question asked. Okay. All right? The question asked has to do with the burden on the courts. Both Justice Kennedy and Justice Roberts are saying, if we recognize this right, the courts are going to be inundated with these kinds of claims, because in every State, ineffective assistance of appellate counsel can't be, by definition, raised in direct review. It all has to be channeled to collateral review. So in every State, every defendant will be able to raise this claim, and it will inundate the system. We don't think so. And you haven't articulated the reasons you don't think so. I could start with how many post-conviction ineffective assistance of appellate counsel cases, the 31 percent that Justice Kennedy was pointing to, in how many of those is relief granted? If any, a very minute number, because it is so difficult. Infant testimony is small. Are there hearings in those cases? Is there a necessity for the court to evaluate the claims before they decide not to grant the allegation? No. Very rarely are there actually Strickland hearings on 2254 in Federal district court, for the reason that it's very hard to, one, show a substantial claim, and then, two, to reach through the budget. The court presumably has to read the filings in the case to decide that the claim is not substantial, correct? Yes, it would be necessary for the court to do that. So the number that are granted really isn't the consideration we're looking to, is it? It's the number that are going to force the courts to review them. Well, I think if one accepts that for now, over 5 years, Martinez has been the law and a number of these claims have been made, at most there might be, in a small subset of those, a very small number of additional ineffective assistance of appellate counsel claims made because it is so hard for a Petitioner to formulate such a claim, for a Petitioner such as Mr. Davila to have raised a claim like this on his own. And, of course, Martinez talked a lot about the importance of having an effective assistance of counsel to vindicate an underlying ineffectiveness contention. Mr. Davila would have had to have been familiar with the jury charge. He would have had to have been familiar with the Texas law. Well, I mean, are you saying it would have been hard to formulate? Are you suggesting that someone facing the sentence that Mr. Davila is facing would say, well, let's not do that. Let's not raise an ineffective assistance of appellate counsel or someone in his sentence, because it's just too hard to formulate that claim? These are situations where the defendant is facing capital punishment, where they're going to raise every possible claim they can. And I don't know why it would be terribly different for defendants facing life in prison or further sentences. Well, there's a very big difference between raising every possible claim that they could versus a lawyer's obligation to raise meritorious, not raise frivolous claims. And there may be at the margin some additional claim that perhaps when it's sifted through is found not to ultimately be successful. We would argue a substantial claim is one that necessarily, when it does exist, is going to be one that we're actually going to be about which there does need to be a hearing about the underlying ineffectiveness. Alitoso What concerns me about your position is that it seems to blast an enormous hole in the doctrine of procedural default, unlike Martinez and unlike Trevino, which were cabined. And it seems to me, and you'll correct me if I'm wrong, that if we agree that the defendant does not agree with your position, then anything that an attorney in Federal habeas can examine the trial record, and if that attorney finds anything that seems to be an error, it can be raised in Federal habeas, even if there was no objection at the time of trial, it wasn't raised on direct appeal, it wasn't raised in a State collateral proceeding. That's where this is going. And if it's an — if the underlying error is ineffective assistance of counsel, well, whatever it is, all of that will be evaluated by the Federal habeas court outside of AEDPA. That's where this is going. So this is an enormous hole. Am I not — isn't that where this — isn't that what this means? Because the argument in Federal habeas would be there was cause because counsel was ineffective at the collateral — State collateral proceeding, and the counsel was ineffective at the State collateral proceeding because there was ineffective assistance on direct appeal, and counsel on direct appeal was ineffective because there was an error at trial. So the Federal habeas court has to make all of those determinations, and if the court — which means the court is going to have to look at whether or not there was an error at trial, and in doing that, it is not going to be asking whether a — whether a State court reasonably rejected the claim because it was never presented to the State court. So it's going to be de novo review. It would be very difficult. The situation is not simply the task for the Federal habeas Petitioner is not to simply aggregate every objected-to or unobjected-to evidentiary error or any downline error and simply present all those in the Federal habeas petition. What they would then have to do is also find some authority from the State court of appeals saying that this type of error or constellation of errors would constitute reversible error. Yeah, well, they'd have to find something that they can argue in the Federal habeas was an error, but procedural default would be out the window. Well, yes, but again, it's not enough to simply say these were the trial errors. One would have to say that these were trial errors and here's some reason why the reviewing court of appeals would have held differently. That's very different from what happened in the Federal habeas court. The Federal habeas court is going to have to analyze that, which means the Federal habeas court is going to have to analyze all of these alleged trial errors that were never previously raised in the State court. Our argument would simply be that it's one thing to make a, say, this error or that error happen at the trial. Of course, every trial has some error that occurred in it, but one would have to do to create a substantial claim, in other words, not one that would be very easily discarded by the Federal district court, would be then to say here's the reason why this would create a different outcome. That would not be easy to do for downline claims, but when one gets to claims as important, as vital as jury instructional errors, those are a type of substantial claim that would be. Breyer. So you started to say this. I guess Martinez itself, one of the concerns was that any mistake that the trial attorney makes, and normally, by the way, you don't make ineffective assistance of counsel claims on direct appeal. I don't think it's usually the same lawyer. You have to make it in State habeas. Okay. The what would happen would be that the defendant with a new lawyer in Federal habeas would go through every mistake that the trial court made, that the trial lawyer made, and say it was ineffective assistance of counsel. And so the judge would have to do just what Justice Alito said, though perhaps a few fewer mistakes. So you started to say this. What's the answer? It's 5 years? To what extent has the Martinez claim proved a burden on Federal court? Is there any empirical information? We don't think there have been. There may have been additional Martinez and now Martinez-Trevino claims that have been made in Federal petitions, but not an increase in the number or appreciable increase in the number of Federal petitions. And what do I ask you, really, is there any empirical information? Because, of course, I think you probably think no. But the other side may think yes. And so that's why I'd like to know, is there any place I could look to find out whether it has proved to be a burden or not, that there have been a lot of claims or not? Yes, we do have some studies cited, and certainly I will get them to have ready to present in the rebuttal. But our point would be that, again, if the rule of Martinez is still the rule, and if it is not also applied to ineffective assistance of appellate counsel claims, then Petitioners, Mike, Mr. D'Aviva, are actually worse off if their trial lawyer did object than if they did not. If they did object, if they had not objected down in the trial court, they would already be covered by the Martinez exception. This is a very modest application of Martinez that we don't think will create an appreciable or large number of claims. Alitoson Martinez concerned ineffective assistance of counsel in a limited number of States, and Trevino arguably extended it to a few additional States. But if we accept your argument, it applies everywhere, and it's not limited to ineffective assistance of counsel. It is, it applies to every single, every single type of error that could occur at trial. No, we would disagree. Certainly the only issue, as Martinez and Trevino, of course, were limited, they talked about ineffective assistance of trial claims. Those were the claims that were presented in those cases. That was different. We don't think that this Court necessarily, if you rule in our favor in this case, that has application anywhere beyond ineffective assistance of appellate counsel  Alitoson Martinez, Jr. Yes, but the ineffective assistance of appellate counsel would be based on any type of error that occurred at trial. So here you have a jury instruction error. But if we agree with you, it would apply to the erroneous introduction of evidence to the improper statements made in closing, to any type of trial error, any type of constitutional trial error you can dream of. So whatever the statistics are on Martinez, this goes way, way, way beyond Martinez and Trevino. I would say that, again, the only, if Martinez is the rule, and those Martinez claims about ineffective assistance of trial counsel now have been made for at least five years, that there's not, as Justice Breyer said, a large number of claims made contending ineffective assistance of appellate counsel. And that's why it's so important that the Martinez doctrine do apply. Breyer I don't think that's, I think, as I'm gathering Justice Alito's point, I think it's an interesting point and important. What is ineffective assistance of appellate counsel? I mean, I understand somewhat ineffective assistance of trial counsel, but it can't just be an ordinary mistake. It has to be something rather special. Now, is ineffective assistance of appellate counsel? The same? Or is an appellate counsel ineffective whenever the appellate counsel fails to present a claim that the trial judge made a mistake in the trial? The Strickland standard for ineffective assistance is the same for contentions of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. So it's very hard to see when there would be ineffective assistance when there wasn't also ineffective assistance of trial counsel. What is such a case? I mean, I'm just probably missing it, but what is a case where there's ineffective assistance of appellate counsel, but not ineffective assistance of trial counsel? What is that case? McAllister Yes, certainly that evidence is seen in Mr. de Villa's case, because there is, in Texas, jury instructional error is not forfeitable. In other words, there is not some unless the trial lawyer objects, there's necessarily an exception. Breyer Then why didn't the trial counsel? I can see that this was a very important matter for this particular defendant, but then why wasn't the trial counsel ineffective? McAllister Well, again, the trial counsel did formulate, maybe not the best calibrated, but did formulate an objection. I think the way in which this arose in this case is very unusual, in that neither the State, the State never requested a transferred intent instruction. After the jury, which had been out for over four hours at this point with those confessions, sent out that jury note number 2, asking directly about the theory of Mr. de Villa's offense. Breyer Now, what about saying this? Suppose we said, yes, there is, it's the same situation, you know, you have an ineffective assistant, you have an ineffective appellate counsel, well, obviously you can't raise it because he was ineffective, so you've never had a shot at it. It's catch-22, same with the trial counsel. But those things, it's very unlikely that you're going to have ineffective assistance of appellate counsel where there wasn't also the ineffective assistance of trial counsel. It's very hard to think of such an instance, and just the bringing of an ordinary mistake, his failure to bring an ordinary mistake, will unlikely to be qualified. Suppose we wrote that into the opinion or the equivalent, what would you think of that? I think the problem is that the question here is not a Strickland determination as to the direct appellate attorney in this case. There may have been a strategic reason not to raise the claim. I would rather be skeptical, considering the direct appellate brief specifically did not request oral argument. There were no page limitations they were up against or anything like that. But that would be something that would be sorted out at a Strickland hearing, where the first prong, the tactical reason for doing or not doing something, would be pressed out in detail. Roberts' Counsel, we've spent a lot of time talking about Martinez, but one case we haven't discussed is Coleman. Yes. And Coleman sets out the general rule that ineffective assistance by counsel in collateral review does not suffice to establish cause for purposes of Federal habeas. That's the general rule. And Martinez carves out a small exception for when there wouldn't be any chance to raise an issue in State court at all. And that doesn't apply here, because trial court counsel could have raised this issue. We'd all admit that. So when we overrule a precedent or part of a precedent, as you're, I think, effectively asking us to do with Coleman, we normally don't just ask about the merits. We also ask about the reliance interest, the workability, whether the question is statutory rather than constitutional. And I didn't see you address any of those factors in your brief, and I'm wondering what I'm supposed to make of that. Help me out. Yes. The Coleman rule bars all other attorney mistakes that would be imputed to a client. Martinez was very clear that there was not a stare decisis problem, because in Coleman the ineffectiveness was missing the deadline for the appeal from the hearing on the habeas petition in Federal – in State court in Virginia, not an ineffectiveness in the initial collateral proceeding itself, called first-tier review opportunities at that point in time. Nothing about the relief Mr. Davley is seeking will have any effect on deficient performance by Federal habeas counsel. There would be no effect if a State petitioner missed a limitations period to file in Federal district court. There would be no effect if that State habeas petitioner had gotten leave to file a successor writ, or if they never filed for State habeas, or if they declined the State-appointed attorney, the attorney the State offered to appoint. All those situations would still be barred by the rule in Coleman. So Coleman is very much good law. Martinez simply looked at a piece that was arguably dictated in Coleman whether or not the ineffectiveness was in that initial review from the collateral procedure itself, and that's the situation we have here. Ginsburg asthma question about your bottom line. I think you said that if counsel had taken up, challenged the instruction on direct appeal, it would have led to a new trial. So why a new trial? Why isn't the consequence of ineffective assistance of appellate counsel not a new trial of the case, but just a new State court appeal? Oh, yes. Well, the remedy, the Federal remedy that we're seeking would be to file an additional supplemental direct appeal in State court, at which the argument would first be made that the instructional challenge was the harm standard of Almanza, or alternatively under the agreed-to-harm standard of Almanza. But the ultimate new trial would, of course, have to be upon prevailing on a new direct appeal in the Texas Court of Criminal Appeals. So I would say we're balancing on time for rebuttal. Thank you, counsel. Mr. Keller. Thank you, Mr. Chief Justice, and may it please the Court. Extending Martinez to appellate IAC claims will have huge systemic costs by opening up the entire trial and everything that happened at trial to Federal habeas review. And the countervailing concern, as Justice Sotomayor noted, is there is an infinitesimally small number of meritorious appellate IAC claims. So you're going to have huge costs with them. Sotomayor, but does that mean that we don't remedy that? Assuming, because I agree, Justice Breyer pointed out and others have, the number of cases are going to be tiny. And as with all cases, there's an initial uptick of claims until people settle down and realize that it's a small number that are viable. And that happens pretty quickly. Do we ignore that simply because there might be that small uptick at the beginning? Well, and this is why Coleman is still the rule. And Martinez expressly reaffirmed Coleman. Outside of that narrow context of trial IAC claims. You need a substantial claim of IAC. This is no one is going to be looking at an ineffective assistance of appellate counsel claim, assuming one is viable, unless there's a substantial claim. And no one will otherwise look at it. Well, and here, the question is, the relevant appellate IAC claims to look at here are those where the claim was raised in trial court, and the trial court did, in fact, adjudicate, decide the issue, it made a record, and then both appellate and habeas counsel have chosen not to raise it. Yes, and just to fortify your point, I take it there are any number of defense counsel objections that are overruled, so defense counsel has been adequate, but then the appellate counsel may very well overlook some of those, and that is so the idea that there's not going to be IAC at the appellate level if there was not IAC at the trial level, it seems to me not sound. Justice Kennedy, and when here, there's no dispute that trial counsel was effective. They have not raised a trial IAC claim about the supplemental jury instruction. And so while appellate IAC claims are difficult to prevail, it's going to be even more difficult in this situation, because the trial IAC gateway that Martinez already provides would give a Petitioner everything they needed if trial counsel was ineffective. So if trial counsel does raise the claim, if trial counsel does preserve it and the trial court does decide the issue, then both appellate and habeas counsel choose not to raise it, it's going to be an exponentially lower chance that those claims are going to be meritorious. Kennedy, could you address my question to the Petitioner's counsel? What is the standard that we're supposed to follow in deciding this case? Our view of the systemic consequences, and what is the case authority that gives us instruction in that regard? Martinez itself recognized that what it was doing in creating the narrow exception from Coleman was that was an equitable judgment. And in fashioning the rule, the Court looked at, it was trying to maintain a baseline where no court had ever adjudicated the underlying claim of trial error, and the Court recognized the bedrock foundational unique right to trial counsel, and putting together those two factors, plus the channeling concern, those were the three pillars of Martinez, and none of those three pillars are present here. Sotomayor, no one is reviewing whether appellate counsel has been adequate. Do you, although you're not entitled constitutionally to appellate counsel under a direct appeal, I don't know that we haven't repeatedly, and so has every other court, recognized the importance of counsel at the appellate level. I think virtually every State, if not every State, gives you a lawyer. So that prong is, in my mind, equal. The second prong is the- Could you respond to that first? Is that okay, Justice Sotomayor? Because there is, there's no right, there's no need to have an appellate process, but once the State has given an appellate process, there is a right to have effective assistance of counsel on appeal. So that seems an important right. Every appellate IAC claim is necessarily going to, though, be based on an underlying issue of an alleged trial error. In other words, this is going to be a, to use the words of Prisoners' Counsel in Martinez v. Ryan, appellate IAC claims are a second-order claim. They're going to be based on what happened at trial. And the trial court will have already adjudicated that claim of underlying trial error in the relevant set of cases that any extension of Martinez could apply to, because, again, if the claim is unpreserved- Sotomayor, I'm sorry. They're only, they're not asking the question on the trial court whether appellate counsel has erred. They're asking a different question. That's correct. But an appellate IAC claim necessarily says, my appellate counsel didn't raise an issue, and that issue is something that happened at trial that I thought was error. That issue- Not just error, but error that likely to result in a different outcome. Yes. However, that alleged trial error that would have resulted in a different outcome would have been, in fact, adjudicated in the trial court already, and so that baseline- But even if the court were reviewing this under plain error, though- The question is that appellate counsel err in failing to raise something that might ultimately go to the Supreme Court, as has happened. The Martinez trial IAC gateway, though, that already exists, would cover any claim that was not, in fact, preserved in the trial court. So what the court is confronting now is whether to extend Martinez to situations where the trial court has, in fact, already ruled on the case. So really, what this case concerns would be a doubly defaulted claim of trial. They ruled on a question of error below, but not a question of appellate counsel error. That's correct. The precise ruling on the appellate counsel issue, that claim in particular would not have been passed upon. However, that claim is necessarily predicated on an issue of an alleged trial error that would have been adjudicated, and then neither appellate nor habeas counsel raised it. And in that situation, when you'd have to have three levels of error, there's going to be an infinitesimally small number of cases that are meritorious, combined with opening up the entire trial, every single issue, even State law objections to Federal habeas review. That would be taking the court back to something akin to Fay v. Noya, which was over  Breyer. But it's the same question that I had before. I mean, every instance in which a trial counsel might have objected, but didn't, in principle, could be the subject of Martinez. I suppose that's quite a few. I don't know if there are any more or any less. So what's actually happened? Is there any information anywhere about whether any empirical information about whether habeas courts, Federal habeas courts, have been deluged, or do we know? The answer is yes. In our brief, we've pointed out Martinez has been cited 3,800 times in Federal cases since it was decided. And I would also point the Court to the amicus brief for the Criminal Justice Legal Foundation, page 20. What it did was it looked at the last ten cases in the Ninth Circuit out of Arizona and capital cases. Arizona was picked because that would have been the longest-standing State that has that rule, because that was where Martinez came from. And seven out of the ten cases there raised Martinez claims. We are facing none. We are facing all sorts of collateral litigation in the Martinez trial IAC paradigm. And the Court justified that on the basis that that right was unique. Martinez was just the latest in a long line of cases where this Court has treated the right to trial counsel and only that right as unique that would be an exception to procedural bars that would apply otherwise. Breyer. Is it fair to say several hundred a year have come up under Martinez, out of roughly how many habeas petitions? Out of 50,000, I don't know, 100,000, 40,000? I do not have those statistics. Several hundred a year. Now, is there a reason to think there would be more? I mean, after all, you know, I grant you it's slightly different. You're complaining here about a trial error that was raised and the judge wrongly decided it, and the counsel on appeal should have pointed that out, but he didn't. Just like you point out the trial lawyer should have raised, but he didn't. Very, very few are granted, very few. And here I guess very, very few would be granted, but the burden would be to read all those. Now, is it more, you think? Why would it be more? I don't see why it would be more. It might be. That's what I'm asking, though. Well, I'm not sure more actual petitions would be filed, but the courts will certainly see a massive uptick in Federal habeas review of appellate IAC claims. As the reply brief at page 15 noted, a third of the cases were raising appellate IAC claims. And it's not just will these claims be successful, it's are courts going to have to go through them. And consider in briefing this case what the courts in the States will be presented with. You'd be arguing about what did appellate counsel raise, what didn't appellate counsel raise, which claims were stronger, and then what was the underlying trial error. But you could do that. Wouldn't this apply in – I mean, this would apply in every State, right? Yes. Not just States where Martinez and Trevino apply, right? That's right. Well, wouldn't that be significant – pertinent in assessing the significance of the number of times this issue is going to be raised? It absolutely would. That it's going to be raised in 50 States rather than two? It would. And this goes to the point that Martinez recognized, that there is an external factor. There's a deliberate choice by the State to channel claims. That's not present here. And it will apply in all 50 States. Well, yes, that's true, but how many are in the other? How many – what's the number in the other? What is the number? I mean, the norm, I thought, was that you raise an ineffective assistance counsel claim in the collateral proceeding. So how many States actually does Martinez not apply to? Do you know that? I doubt that it's, you know, a small number, but I'm pretty certain it is in every State. Do we have any idea here? At page 33 of our brief, I don't have the precise number, but we do cite various cases that show that Massachusetts, Wisconsin, Ohio, Oklahoma, the Martinez rule does not apply, because effectively what happens there is the proceedings are stayed so that the trial I see claim can be raised at that time. But in most States, it does apply, isn't that right? Correct. Yes. I mean, General, I think that your brief did the right thing in terms of thinking about Martinez, to say why did Martinez make the exception that it did, and ask whether those same factors suggest an analogous exception here. I think that that's the right way to go about thinking about this question. So, I mean, it seems to me that your main thing here is this idea that you did get one shot. Is that correct? Combined with the unique right to trial counsel and the significant systemic costs. Okay. So the unique right, I mean, I think we've talked about it's like trial counsel for sure is the most, most, most important, but appellate counsel is pretty important too. But just let's think about this. You, you got one shot already. I guess I'm just not sure I understand it because it seems to me what Martinez said is you wouldn't, you wouldn't get a shot to make your trial ineffective assistance of trial counsel claim your IATC claim. And only if we made the exception that we did would you get a shot to make that trial counsel claim. And here, similarly, only if we do the same thing will you ever get a shot to make a claim that your appellate counsel was deficient. And people do have an independent freestanding constitutional right to effective appellate counsel. But Martinez focused on the fact that there was a particular trial error and a particular type of trial error that was not being able to be raised. And appellate IAC claims are going to be based on alleged trial errors. Kagan. Kagan. I think if you read Martinez, Martinez basically does not talk at all about the underlying error. It talks about the ineffective assistance claim. Now, of course, ineffective assistance is important because, you know, it's not just the lawyers there for show, it's, it's to remedy or prevent some underlying claim. But the same is true here. If Martinez was trying to figure out how to ensure the fairness of the trial process, this would be trying to figure out how to ensure, through effective counsel, the fairness of the appellate process. And it seems to me quite analogous, indeed identical, just on a different level. But in Martinez, the ineffective assistance claim was a trial error. The litigation necessarily has to be. Well, here it's an appellate error. But. Ginsburg. One thing that's the same is that the State habeas would be the first opportunity to raise this. You can't raise ineffective assistance of appellate counsel on the appeal. That's obvious. So the State habeas is the first time you could raise it. And in considering this question, I'm sure you anticipated this, Justice Scalia in Martinez said there's not a dime's worth of difference between an ineffective assistance of trial counsel, the issue in Martinez, and those where Petitioner claims his direct appeal counsel was ineffective. Was he wrong in thinking there's not a dime's worth of difference? He was wrong in this instance. And the reason is because Martinez was trying to maintain a baseline where at least some court had adjudicated the underlying trial error. And even as Martinez itself reaffirmed the general rule of Coleman, and if this court were to start extending that now to appellate IAC claims, it would be returning the court to something akin to Faye v. Oyen, the litigation has to be on some court. Kagan. Kagan. First of all, you're sort of redefining it so it fits your position, but Martinez was about having some court evaluate the ineffective assistance of trial claim, and this is about having some court evaluate the ineffective assistance of appellate counsel claim. And is there an underlying thing that we're trying to get at? Sure. In Martinez it was ineffective assistance of trial counsel to ensure that the trial process was fair. Here it's having some court litigate the ineffective assistance of appellate counsel claim in order to ensure that the appellate counsel is fair. So the two are quite analogous. But under that reasoning it would be the right to counsel necessarily has to end at some point. It could always be that you could then show ineffective assistance of State habeas counsel or Federal habeas counsel. It ends, I think you're exactly right, and I think it ends where the Constitution gives out. Because we've said that although the State does not have to set up an appeals process, once it sets up an appeals process, you are entitled to effective counsel in it. And so that's where it ends. That's right. As a constitutional matter. However, State procedural bars under Coleman and Martinez still apply. And the cost of Federalism and comity, particularly in a situation like this where the State trial court will have necessarily already decided the issue, and upsetting that is going to be precisely what the court was trying to avoid in Coleman. And that's why when the first sentence of Coleman is this is a case about Federalism, and indeed this case is, too. Kagan. And then there was Martinez. And as you said, in Martinez and in Trevino, we really went through the three factors that you talk about in your brief, how important is this, is this the only shot, and, you know, does the State have something to do with this or something. Is that the third one? And, you know, I'm suggesting it's pretty important, and this is your only shot. But the difference is it's not your only shot because the claim is going to be about an underlying alleged trial error. Here, opening up the claims for appellate IAC, you're going to have to have But this claim is not about the underlying trial error. This claim is about effective assistance of appellate counsel. And that's about ensuring that the appellate process has integrity and fairness attached to it. But, Justice Kagan, at root here, the issue is a supplemental jury instruction which was not preserved, which was correct, and there would have been no prejudice from in any event. And this is the type of case the Court should be worried about, are going to be these State law objections of something that came up at trial, although this is an odd posture because it was not preserved, in fact, but that would be the case the Court would have to be worrying about. And then we're going to be here twice over that claim being defaulted, arguing about not necessarily whether there was, did appellate counsel make this decision or that decision. It's going to collapse into an underlying review of what happened at trial, and that's going to apply for all errors at trial on Federal habeas, which is something this Court has long avoided, to undo the judgments issued by State courts, particularly when there are doubly defaulted claims that were, in fact, considered by at least one court before. Kagan. But, General, that assumes that some court is going to say, if there was a trial error that we can see out there, then there was ineffective assistance of appellate counsel. But that's not correct for many of the reasons that people on, I mean, that everybody acknowledges. To have ineffective assistance of appellate counsel, it's not because you failed to make an argument about any old trial error. It's going to be a special and rare thing. And, Justice Kagan, precisely because it's going to be rare, that it's going to be an infinitesimally small number of cases that are going to be meritorious, that has to be weighed under Martinez's equitable calculus against the huge systemic cost of opening up the entire trial on Federal habeas review to every little State law objection, an evidentiary objection. Here it's jury instruction. Why will it be a small thing if you can identify, looking back, that there was an error that was taken for granted and it might have led to a different result at trial, but it wasn't raised on direct appeal, then there's going to be ineffective assistance of appellate counsel. Sotomayor, exactly, Justice Alito, and that's why it will collapse. Also, too, what we're Sotomayor, sorry, the test, that's not the test. The test would have resulted in a difference on appellate review, not a trial. Because the appellate review is on the basis of the record as it exists, not on one that should have existed. Yes, but it's going to collapse into an analysis of what was the alleged trial error, because that would be what appellate counsel should have been trying to raise in that situation. Also, if I can back out, what we're talking about here is not just success on the merits of the claim. Raising a substantial claim of appellate IAC, that standard is the would reasonable jurists' debate standard that the Court is familiar with from the Certificate of Appealability standard. That is not a high threshold to survive. And so the number of claims that would flood into courts on Federal habeas review would be many. Breyer, you'd have to show, wouldn't you, that the any reasonable lawyer would have raised this, would have won this claim and made a difference. Raised it, won it, and it would have made a difference. You'd have to show that, but this case No, well, that's not that easy to show. We just, it's not that easy to show in a, in the same situation in the trial. But that's analyzing whether the claim would succeed. As far as the court is on courts. I accept that, and people raise all kinds of things in habeas. You know, they're, this is, district judges are kept busy with these habeas petitions. I accept that. That's why I'll read the empirical. I'm curious to know just what the situation is empirically. And they're going to be even busier, and it's going to divert their attention from claims that would otherwise be meritorious. Extending an exception like this to an acknowledged set of claims that have an infinitesimally small chance of merit, that is not a good use of judicial resources. That's not why the writ of habeas corpus exists. And the equitable judgment inherent in Martinez and various other cases on habeas review have noted that that equity must weigh in. And when we would be inundated with all sorts of claims about even State law of justice  And the other side has been brought out. I mean, there is the occasional claim where, let's suppose, the appellate lawyer just really didn't even bring an appeal. He had a two-page brief, and the trial was rife with errors and a serious penalty. It was attached, and no relief whatsoever, he can't bring that to any court. You see, that's the other side of it. He has to have failed to do that, and, or at least the State collateral review has to also have been inadequate. And so we have to have a couple of situations where they're both inadequate, or you don't even get into the Federal court. So the standard for winning, which you concede is very tough, but suppose it's met. That's, of course, what's annoying on the other side. Here is a person in jail forever or worse, and the trial filled with errors and didn't have decent counsel anywhere, and what a mess. I mean, shouldn't there be some remedy, and there is none. And that's why Justice Scalia wrote that there's no way to stop this extension. He wasn't for it. First of all, the miscarriage of justice, actual innocence exception to overcome procedural default, already exists. And so that would capture any cases of actual innocence that Your Honor would be discussing. Where does it exist? McQuiggan v. Perkins. You can overcome a procedural default for a miscarriage of justice, wholly separate from Martinez. And in that situation, you could overcome a procedural default using that actual innocence gateway. Now, as Justice Kennedy noted, though, State habeas would be the place to raise that claim. And if the claim was adjudicated in trial court, a record was made for appellate counsel and habeas counsel, and then neither appellate will be able to prove it. Breyer, or actually innocent of the death penalty, and that would be another way that that type of claim would be possible. Sotomayor, Well, that's an interesting open question. McQuiggan, For a different day. But the question before the Court today is whether to extend the narrow exception for trial I.C. claims when the Court has recognized that the trial is the main event, appeals are not central to a determination of innocence or guilt, there's a significant difference between appeals and trials, as the Court has noted in Ross, and the costs of opening up the entire Federal trial do not warrant that extension. Kagan, General, could I just – I guess I got a little bit confused in your exchange with Justice Alito, because you had been pressing this is just going to be an infinitesimally small, infinitesimally small, I think that that was your phrase. And Justice Alito said he thought it would happen all the time, and then you said yes, and then you went back to infinitesimally small. So which is it? McQuiggan, The answer is there's going to be an infinitesimally small number of claims that are actually successful and meritorious at the end of the day. However, the courts and the States are going to be faced with a wide number of these  Kagan, Right. Okay. I thought that his point was different, that it was actually not going to be infinitesimally small. But let's say that it is going to be pretty rare, as you say. You know, then I think it really is Justice Breyer's question. It's like, okay, it will be rare. But the alternative is that those rare, good claims where there really has been a deferred ineffective appellate process and a violation of the constitutional right to a fair appellate process has been violated, and there's no way to correct for that, in the same way that there was no way to correct for the trial, the ineffective trial counsel that we talked about in Martinez and Trevino. You'd still have the actualness in this exception. And also, Martinez reaffirmed the general rule of Coleman. And what State procedural bars necessarily will do is bar certain claims that otherwise could have been raised. But when a trial court has adjudicated the case and neither appellate nor habeas counsel have raised it, the universe of cases that we're talking about here, combined with the cost on the other side of opening the entire Federal trial up, do not warrant that extension. It did reaffirm the general rule of Coleman, except to the extent that this was your only shot. And this is your only shot, to raise a claim of ineffective assistance of appellate counsel, which is a violation of a constitutional right. To raise that particular claim, but that particular claim. That's all we're dealing with. But it will be predicated on an underlying trial issue. And that's the difference. The trial I see claim in Martinez, that was the trial error. That was the particular trial error the Court was concerned about, and that unique bedrock right. Here, in contrast, when the Court has recognized repeatedly that appeals are quite different from trials, and that an appellate IAC claim is necessarily predicated upon an alleged trial error, the Court has adjudicated that alleged trial error. And separating out into saying, well, the appellate IAC claim itself has not been raised, that has to be seen, though, in the context that the underlying claim has. If there are no further questions, we ask that the Court defer judgment of the Fifth Circuit. Roberts. Thank you, counsel. Mr. Kretzer, three minutes. A point at which my friend elicited a little bit of laughter in the courtroom is when he talked about whether or not actual innocence would apply to actual innocence of the death penalty. We said that would be an issue for a future day. I think it bears to note that the error in this case, Mr. de Villa's case, was a guilt innocence phase error. In other words, error that arose at the guilt innocence phase. In other words, had the jury been allowed, properly instructed, was going with Mr. de Villa's theory of defense, he would not have been able to get the death penalty. This was the critical issue in the case. I wonder whether we'd create a couple of strange incentives if we went down your road. If procedural default by state habeas counsel of ineffective assistance of appellate counsel is cause, I could see a world in which state habeas counsel might have an incentive not to raise it. And it might actually be ineffective assistance of state habeas counsel to raise the issue because federal habeas may be more forgiving. So what do we do about that problem, number one? And number two, do we also create an incentive for states to stop using collateral review to test IAC claims? They don't have to do that. It's generally thought to be favorable to defense that they do do that because it gives defense a chance to present evidence and prepare and do things like that. Some states don't permit it, Oklahoma, my old jurisdiction. It's very hard for defense counsel. And don't we create an incentive to go back to that, the bad old days? And so by adding more procedure and perfecting this, do we actually wind up hurting the defense interests in this case? Any state habeas attorney who would deliberately fault a claim from state habeas because they think they can get an ultimately more favorable merits review in federal court would necessarily be violating any number of rules of professional conduct. As an initial matter, they would be why? If it's the effective best strategy for your client, I would think that's exactly what you'd do. Well, as an initial matter, one would necessarily be perpetrating ineffective assistance on their own by deliberately defaulting a claim from state habeas. There's very few attorneys out there who would deliberately open themselves up to a susceptibility of an effectiveness contention if for another reason you're kicked off the court appointments list. There's any number of reasons why lawyers would have a duty of candor to court not to deliberately, strategically try not to raise a claim here so that, in fact, they think they could get some more favorable forum later on. Outside the death penalty context, it has to remember that, of course, the process goes very slowly. And so one might, in a non-death case, in a general felony case, one might already be free from custody by the point they would have this erred in Federal court. The number of Federal courts actually having merits hearings on strickling claims is incredibly small. And considering that habeas is designed, Federal habeas, is designed to prevent and correct severe malfunctions of the State trial system, that's probably a very good thing. And yet, in cases where the underlying ineffective assistance of appellate counsel claim is so integrally intertwined with the underlying strength of the appellate claim that was not raised, I think there's serious pause, because all that Mr. Davila is asking is for the same standard as that which exists in Martinez, bedrock principles, where the situation, the contention has to be raised in a writ. The two situations are exactly analogous. Roberts. Thank you, counsel. The case is submitted.